# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 17, 2021        Decided March 26, 2021

No. 20-7110

IN RE: LARRY ELLIOTT KLAYMAN,
RESPONDENT

*Larry Klayman* argued the cause and filed the brief for respondent.

Before: HENDERSON and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Suspended for ninety days by the District of Columbia Court of Appeals, Larry Klayman, a member of this court's bar, seeks to avoid reciprocal discipline. For the reasons set forth below, we impose a reciprocal ninety-day suspension and refer this matter to the Committee on Admissions and Grievances for recommendations on whether further discipline is warranted.

## I.

Larry Klayman founded Judicial Watch in 1994 and served as its general counsel until he left in 2003. Since then, he has worked as "a public interest attorney and advocate." Br. 13.

Following the filing of a complaint with the District of Columbia Bar in 2013, the Bar's Hearing Committee Number Nine concluded that Mr. Klayman violated Rules 8.4(d) and 1.9 of the District of Columbia Rules of Professional Conduct. *See* Report and Recommendation, *In re Klayman*, No. 13-BD-084, slip op. at 2 (D.C. Bd. of Prof. Resp. Hearing Comm. June 19, 2017). Rule 1.9 provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." D.C. Rule of Professional Conduct 1.9. According to the comments to Rule 1.9, the relevant "matter" is not limited to litigation: "[w]hen a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited." *Id.* The D.C. Bar complaint against Mr. Klayman focused on his representation of three clients in suits against his former employer, Judicial Watch.

The first client, Sandra Cobas, served as director of Judicial Watch's Miami Regional Office. While there, Cobas alleged that she faced a hostile work environment, and Mr. Klayman, as general counsel, advised Judicial Watch about her complaints. After ending her employment with Judicial Watch, Cobas filed suit against the organization in Florida state court. The Florida court dismissed her complaint, calling it "silly and vindictive." *In re Klayman*, 228 A.3d 713, 716 (D.C. 2020) (internal quotation marks omitted). Then, after Mr. Klayman left Judicial Watch and without seeking its consent, he entered an appearance on Cobas's behalf and filed a motion asking the court to vacate its order of dismissal. When the motion was denied, Mr. Klayman initiated and briefed an appeal. The appellate court affirmed the dismissal.

The second client was Louise Benson, from whom Mr. Klayman, while serving as Judicial Watch's chairman and general counsel, solicited a commitment to donate $50,000 for a fund to purchase a building. She made an initial payment of $15,000, but Judicial Watch ultimately did not purchase a building. Years later, after Mr. Klayman had left Judicial Watch, Benson sued the organization, seeking the return of her donation. She was initially represented by another attorney, but Mr. Klayman later entered an appearance as co-counsel, again without seeking consent from Judicial Watch. Judicial Watch asked Mr. Klayman to withdraw, pointing out that he had "organized the fundraising effort" and that "Benson had identified him as a fact witness." *Id.* When Mr. Klayman failed to withdraw, Judicial Watch moved to disqualify him, but the motion was never resolved because the parties agreed to dismiss the case.

Last is Peter Paul. Judicial Watch represented Paul with respect to several legal issues, including an investigation and potential litigation arising from Paul's fundraising activities during his campaign for the New York State Senate. On behalf of Judicial Watch, Mr. Klayman prepared the representation agreement and authorized its signing as well as a subsequent modification. Judicial Watch lawyers later represented Paul in a civil lawsuit in California state court. After Mr. Klayman left Judicial Watch, the organization's lawyers withdrew from the representation. Paul then sued Judicial Watch in the United States District Court for the District of Columbia, alleging that the organization's lawyers had breached the representation agreement. Although Paul was initially represented by other counsel, Mr. Klayman later entered an appearance—again without seeking Judicial Watch's consent.

Judicial Watch moved to disqualify Mr. Klayman, and the district court, then-Chief Judge Royce Lamberth, granted the

motion. *Paul v. Judicial Watch, Inc.*, 571 F. Supp. 2d 17, 27 (D.D.C. 2008). He first concluded that "it [wa]s clear that Mr. Klayman's representation of Mr. Paul" was an "unambiguous violation" of Rule 1.9. *Id.* at 21. The representation, Judge Lamberth explained, was "the very type of 'changing of sides in the matter' forbidden by Rule 1.9." *Id.* (quoting D.C. Rule of Professional Conduct 1.9). And although "not unsympathetic" to the prejudice that Paul might suffer due to Mr. Klayman's disqualification, Judge Lamberth explained that he "simply [could not] condone such a flagrant violation of a Rule of Professional Conduct essential to the proper functioning of our system of justice." *Id.* at 27.

Following a hearing, Hearing Committee Number Nine found that "Mr. Klayman violated Rule 1.9 (or its Florida equivalent) in all three" representations. *In re Klayman*, 228 A.3d at 717. The Hearing Committee also found that Mr. Klayman's representation of Paul violated Rule 8.4(d), which prohibits lawyers from "[e]ngag[ing] in conduct that seriously interferes with the administration of justice." Lastly, it found that Mr. Klayman gave false testimony before the Hearing Committee. The Committee recommended that Mr. Klayman "be suspended for ninety days, with reinstatement contingent upon a showing of his fitness to practice law." *Id*.

The Board on Professional Responsibility agreed that Mr. Klayman had violated Rule 1.9 and recommended that he "be suspended for ninety days." *Id.* The Board, however, "disagreed with the Hearing Committee's finding that Disciplinary Counsel proved a violation of Rule 8.4(d)," as well as with its finding that Mr. Klayman had "provided false testimony," and it rejected the Hearing Committee's reinstatement condition. *Id.*

In the District of Columbia Court of Appeals, Mr. Klayman chose not to challenge the Board's conclusion that he had violated Rule 1.9. *See id.* at 717 ("Before this court, neither Mr. Klayman nor Disciplinary Counsel takes issue with the finding that Mr. Klayman violated Rule 1.9 or its Florida equivalent."). On June 11, 2020, the Court of Appeals accepted the Board's findings; suspended Mr. Klayman for ninety days, effective July 11, 2020; and required that he complete a continuing legal education course on conflicts of interest as a condition of reinstatement.

Under Rule X of this court's Rules of Disciplinary Enforcement, Mr. Klayman was obligated to "notify the Clerk of this Court in writing within ten days of such discipline"— his suspension by the D.C. Court of Appeals. D.C. Cir. Rules, App. II, Rule X. He failed to do so.

On July 24, this court received notice from the D.C. Court of Appeals of Mr. Klayman's ninety-day suspension. *See* Certified Copy of Order, *In re Klayman*, No. 20-8511 (D.C. Cir. Aug. 4, 2020). Almost two weeks later, on August 4, we ordered Mr. Klayman to "show cause . . . why the imposition of identical discipline by this court would be unwarranted." Order, *In re Klayman*, No. 20-8511 (D.C. Cir. Aug. 4, 2020). In response, Mr. Klayman filed the brief now before us. Mr. Klayman was reinstated to the District of Columbia Bar effective December 10, 2020.

## II.

As our court has explained, "[a] member of this court's bar who 'has been suspended or disbarred from practice in any other court' is subject to reciprocal discipline in this court." *In re Zdravkovich*, 634 F.3d 574, 577 (D.C. Cir. 2011) (quoting Fed. R. App. P. 46(b)(1)(A)). In determining whether to impose reciprocal discipline, "we must undertake an 'intrinsic

consideration of the state record,' recognizing that a state court's decision to impose a particular sanction 'is not conclusively binding on the federal courts.'" *Id.* at 577 (citation omitted) (quoting *Selling v. Radford*, 243 U.S. 46, 51 (1917); *In re Ruffalo*, 390 U.S. 544, 547 (1968)). "Nevertheless, the state court's substantive findings are entitled to a high degree of respect," *id.*, as "we are not sitting as a court of review to discover error in the [judge's] or the [state] courts' proceedings," *In re Sibley*, 564 F.3d 1335, 1341 (D.C. Cir. 2009). "The burden of showing why the court should not impose reciprocal discipline rests with" Mr. Klayman. *See id.* at 1340.

Under Rule IV(c) of our Rules of Disciplinary Enforcement, "this Court shall impose the identical discipline" imposed by the D.C. Court of Appeals "unless the attorney demonstrates, or this Court is satisfied that:"

> (1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

> (2) there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or

> (3) the imposition of the same discipline by this Court would result in grave injustice; or

> (4) the misconduct warrants substantially different discipline.

D.C. Cir. Rules, App. II, Rule IV(c).

Mr. Klayman does not challenge the Hearing Committee's finding that, in violation of Rule 1.9, he represented Cobas, Benson, and Paul in the same or substantially similar matters on which he advised Judicial Watch, all without seeking consent from Judicial Watch. Instead, Mr. Klayman argues that he qualifies for three of the four Rule IV(c) exceptions. We consider each, though in a slightly different order.

**A.**

We begin with the second exception, which requires that we consider whether "there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject." As noted above, Mr. Klayman acknowledges that he represented Cobas, Benson, and Paul in the same or substantially similar matters on which he advised Judicial Watch without seeking Judicial Watch's consent. It is thus hardly surprising that he never even tries to make the "difficult showing" that there was an infirmity of proof. *In re Zdravkovich*, 634 F.3d at 579.

Relying on a letter from "renowned legal ethics expert" Ronald Rotunda, Br. 4, Mr. Klayman argues that he committed no ethical violation because he was "simply pursu[ing] an obligation that he knew that he owed to Sandra Cobas, Peter Paul, and Louise Benson," Br. 6 (internal quotation marks omitted). According to Mr. Klayman, he was fulfilling his duty under Rule 1.3(a), which requires lawyers to represent clients "zealously and diligently," as Cobas, Benson, and Paul were otherwise unable to afford counsel and they would have "los[t] their legal rights." Br. 7 (internal quotation marks omitted). Insisting that he had an "ethical obligation . . . to zealously and diligently represent" the three clients, Mr. Klayman contends that he committed no ethical violation despite representing

them without seeking consent from Judicial Watch. *Id.* (internal quotation marks omitted).

This argument is entirely without merit. Even though Mr. Klayman owed a duty of zealous representation to Cobas, Benson, and Paul, Rule 1.9 is absolute. Absent informed consent from Judicial Watch, Mr. Klayman may not "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of" Judicial Watch. As Judge Lamberth put it, "Rule 1.9 provides no exception to its prohibition on successive representation." *Paul*, 571 F. Supp. 2d at 27.

Next, Mr. Klayman quotes at length from a portion of the Rotunda letter that relies heavily on the Supreme Court's decision in *Maples v. Thomas*, 565 U.S. 266 (2012). *See* Br. 6–7. There, the Court concluded that counsel's failure to properly withdraw from representation of a death row inmate excused the inmate's failure to meet a crucial filing deadline because counsel's effective abandonment was an "extraordinary circumstance." *See Maples*, 565 U.S. at 289. From this, Rotunda concludes that "it [was] reasonable and understandable that Mr. Klayman believed that he had an ethical obligation . . . to zealously and diligently represent" Cobas, Benson, and Paul. Br. 7 (internal quotation marks omitted). *Maples*, however, has nothing whatsoever to do with this case, as the lawyers involved there were not representing a client whose interests were adverse to a former client. *Maples* is about client abandonment, not switching sides.

Seeking support from Judge Lamberth, Mr. Klayman points out that the judge found "ambiguity with respect to the standard for disqualification in the face of a violation of Rule 1.9." Br. 8 (internal quotation marks omitted). But as the plain language of this quote demonstrates, the ambiguity Judge

Lamberth found related to the standard for "disqualification" of a lawyer who violated Rule 1.9. He found no ambiguity at all with respect to whether Mr. Klayman had in fact violated Rule 1.9. Quite to the contrary, Judge Lamberth thought it "clear" that Mr. Klayman's representation of Paul amounted to "an unambiguous violation" of the rule. *Id.* at 21. In any event, Judge Lamberth ultimately disqualified Mr. Klayman. *Id.* at 26–27.

**B.**

Invoking the first Rule IV(c) exception—whether "the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process"—Mr. Klayman argues that because "the bar proceeding was instituted nearly eight (8) years after the alleged ethical infractions occurred," he suffered "undue prejudice," as he was unable to "produce all of the documentary evidence and witnesses in support of his defenses." Br. 10.

On its face, however, the exception concerns due process violations arising from "lack[] [of] notice or opportunity to be heard," and it is undisputed that Mr. Klayman "was given notice of the charges against him and . . . had the opportunity to call and cross-examine witnesses, make arguments, and submit evidence." *In re Zdravkovich*, 634 F.3d at 578. Even if due process concerns extend beyond the exception's plain language, Mr. Klayman has failed to show any prejudice. *See In re Ekekwe-Kauffman*, 210 A.3d 775, 785 (D.C. 2019) (explaining that in disciplinary proceedings, an "[u]ndue delay may result in a due process violation" when "the respondent demonstrates actual prejudice—that is, that the delay in prosecution impaired [his] defense"). He quotes the Rotunda letter for the proposition that, at the time of the disciplinary proceedings, Paul "[was] in federal prison in Texas," "Cobas ha[d] health problems," and "Benson [was] an 83-year-old

woman." Br. 11 (internal quotation marks omitted). But when pressed at oral argument, Mr. Klayman was unable to explain how any of this—or indeed anything else—actually prejudiced him. *See* Oral Arg. Tr. 15–16.

Mr. Klayman's remaining arguments are equally without merit. He invokes the doctrine of laches but fails to cite a case from either this circuit or the D.C. Court of Appeals that applies laches to disciplinary proceedings, nor are we aware of one. Quoting the Rotunda letter, he claims that "Judicial Watch submitted boxes full of voluminous documents to the Bar Counsel's office in secret" and those documents were not served to "Mr. Klayman until the Petition was filed," Br. 13 (internal quotation marks omitted), but he provides no evidence of this alleged due process violation. *See Allen v. District of Columbia*, 969 F.3d 397, 405 (D.C. Cir. 2020) (explaining that this court does not "consider arguments raised in such skeletal form").

## C.

In support of his argument under Rule IV(c)'s third exception, which applies when "imposition of the same discipline by this Court would result in grave injustice," Mr. Klayman largely reiterates his unmeritorious infirmity of proof and due process arguments, and then urges us to consider his "course of work as a public interest attorney." Br. 13. Specifically, he explains that he "often takes cases on pro bono . . . to try to make society a better place." Br. 13.

Rule 1.9, however, contains no exception for public interest lawyers. Indeed, many fine public interest lawyers appear in this court, and we think they would be stunned at the suggestion that the rule does not apply to them. As Judge Lamberth emphasized, Rule 1.9's bar is "essential to the proper functioning of our system of justice." *Paul*, 571 F. Supp. 2d at

27. Underlying the rule is counsel's "duty of loyalty" to a client, which incorporates "a duty to avoid conflicts of interest." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "Without such a rule, clients may be reluctant to confide completely in their attorneys." *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3d Cir. 1984). In view of the principles animating Rule 1.9, recognizing the public interest exception Mr. Klayman urges would in fact be contrary to the public interest.

**III.**

Because Mr. Klayman has failed to carry his "burden of showing why the court should not impose reciprocal discipline," *In re Sibley*, 564 F.3d at 1340, we shall impose a ninety-day suspension. Mr. Klayman protests that he "has already served a 90-day suspension period," claiming that from August 12 to December 18, he made no appearances in the D.C. Circuit. Br. 15.

This argument rests on a flawed assumption: that our ninety-day suspension will apply *nunc pro tunc* to the date when the D.C. Court of Appeals imposed its suspension. Although we sometimes do impose reciprocal discipline retroactively, we do so only in limited situations, such as where the attorney, pursuant to Disciplinary Rule X, promptly notifies this court of the discipline imposed, and/or refrains from representing clients in this court while suspended before another court. Mr. Klayman did neither.

When asked at oral argument why he had failed to notify the court pursuant to Rule X, Mr. Klayman offered no coherent explanation. *See* Oral Arg. Tr. 10–12. In a self-styled "Supplement to Respondent's Initial Brief," filed just after oral argument, Mr. Klayman told us that "[t]he reason that he did not immediately inform" this court of his suspension "was

because" his petitions for rehearing and rehearing en banc of his suspension "were pending [in the D.C. Court of Appeals] at the time and Mr. Klayman believed that he would be successful in obtaining a favorable ruling." Supplement to Respondent's Initial Br. 2. This is an astonishing argument. Rule X is crystal clear: "an attorney admitted to practice before this Court" who is "subjected to public discipline for professional misconduct . . . *shall* so notify the Clerk of this Court in writing within ten days of such discipline." *See* Disciplinary Rule X (emphasis added). "Shall" means shall, and, unsurprisingly, the rule contains no exceptions for lawyers who think they might successfully challenge their discipline on appeal.

With respect to the second basis for considering imposing discipline retroactively—voluntary withdrawal from practice before this court—Mr. Klayman failed to withdraw from representing three clients until *after* we issued our order to show cause. *See* Motion to Withdraw as Counsel, *Luhn v. Scott*, No. 19-7146 (D.C. Cir. Aug. 10, 2020); Motion to Withdraw as Counsel, *Lovelien v. United States*, No. 19-5325 (D.C. Cir. Aug. 12, 2020); Motion to Withdraw as Counsel, *Corsi v. Mueller*, No. 19-5314 (D.C. Cir. Aug. 12, 2020). Indeed, Mr. Klayman failed to mention one of those cases in his brief, *see* Br. 15, and even filed a brief on behalf of one client two days after his D.C. suspension took effect, *see* Appellants' Final Reply Br., *Lovelien v. United States*, No. 19-5325 (D.C. Cir. July 13, 2020).

## IV.

For the foregoing reasons, Larry Klayman is suspended from practice before this court for ninety days, effective as of the date of this opinion and the accompanying order. Mr. Klayman is prohibited from holding himself out to be an attorney at law licensed to practice before the United States Court of Appeals for the District of Columbia Circuit during

the suspension. In addition, pursuant to Disciplinary Rule II(d), this matter is referred to the Committee on Admissions and Grievances for recommendations about any further discipline warranted by Mr. Klayman's failure to comply with Rule X.

*So ordered.*